1
2
3
4
5
6
7
# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLOS MENDOZA,<br><br>            Petitioner,<br><br>   v.<br><br>ATTORNEY GENERAL OF THE STATE<br>OF CALIFORNIA, et. al.,<br><br>            Respondents. | 1:06-CV-01350 JMD HC<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT**<br><br>**ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY** |

Petitioner Carlos Mendoza ("Petitioner") is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

## PROCEDURAL HISTORY

Petitioner is currently in the custody of the California Department of Corrections and Rehabilitation pursuant to a judgement of the Stanislaus County Superior Court. Petitioner is currently incarcerated at California State Prison-Sacramento. (Pet. at 1). Petitioner was convicted by a jury in August 2003 of two counts of assault with a firearm (in violation of Cal. Penal Code § 245(a)(2)); exhibition of a firearm (Cal. Penal Code § 417(a)(2)); and participation in a criminal street gang (Cal. Penal Code § 186.22(a)). (CT at 219; Lod. Doc. 5 at 2). A jury further found true sentencing enhancements pertaining to Petitioner's personal use of a firearm (Cal. Penal Code § 12022.5(a)) and participation in a gang (Cal. Penal Code § 186.22(b)(1)). Petitioner was sentenced to an aggregate term of nineteen years and four months. (Pet at 1; Answer at 2).

1   Petitioner appealed his conviction to the California Court of Appeal on June 1, 2004.  (*See*

2   Lod. Doc. 1).  The state appellate court affirmed Petitioner's conviction in a reasoned opinion on

3   February 8, 2005.  (Lod. Doc. 5).

4          Petitioner filed a petition for review to the California Supreme Court on March 21, 2005.

5   (Answer at 2).  The California Supreme Court summarily denied the petition on August 10, 2005.

6   (Lod. Doc. 7).

7          On September 15, 2006, Petitioner filed the instant federal petition for writ of habeas corpus

8   with the Court.  (Court Doc. 1).

9          On February 14, 2008, Respondent filed an answer to the petition.

10  Consent to Magistrate Judge Jurisdiction

11         On October 24, 2006, Petitioner consented, pursuant to Title 18 U.S.C. § 636(c)(1), to have a

12  magistrate judge conduct all further proceedings, including entry of the final judgment.  (Court Doc.

13  8).

14         On January 20, 2008, Respondent also consented to the jurisdiction of a magistrate judge.

15  (Court Doc. 11).

16         On March 16, 2009, the case was reassigned to the undersigned. (Court Doc. 18).

17                              **FACTUAL BACKGROUND**[1]

18         Rosie Riojas lived with her boyfriend Frank Savala, his mother Antonia, and
    his brother Kinsino. In addition, Frank and Rosie's young daughter lived with them.
19  On the evening of June 14, 2002, Kinsino went outside. Rosie went outside and saw
    Kinsino arguing with two men. She recognized one of them as Moises Mendoza.
20  [Defendant and Moises were tried together. Moises's appeal has already been
    determined in case number F043998.] Rosie ran inside and told Frank. Frank went
21  outside and Rosie and Antonia followed. Rosie told the men to leave because they did
    not want any problems. Defendant, Moises's brother, walked up with a dog.
22  Defendant argued with Kinsino. Rosie recognized defendant.
           Moises stated, "Brick City." Brick City is a Sureno street gang. Defendant was
23  arguing with Frank. Defendant got his gun out and fired it at Frank's feet. Kinsino and
    Frank ran into the garage. Rosie told defendant, Moises, and the other man to leave.
24         Rosie went inside, and then returned outside to again tell the men to leave.
    She thought the men would listen to her because they had been friends in school.
25  They said they were from Brick City. The others all came outside. Kinsino and
    Moises started arguing and both fell to the ground. Antonia ran inside and got her
26  cellular telephone to call police. Antonia returned outside and hit Moises on the head

27  ─────────────────────

28         [1]The facts are derived from the factual summary set forth by the California Court of Appeal, Fifth District, in its
    unpublished opinion issued on February 8, 2005, and are presumed correct. 28 U.S.C. §§ 2254(d)(2), (e)(1).

with a rock. Kinsino and Moises split apart, and Moises picked up the rock and threw it through a window of the house.

All three continued to say things such as, "It's Brick City right here." Frank told them they should leave in order to avoid problems. Moises was angry and told Antonia to stop calling the police and they would leave. Antonia dropped the telephone and told them to leave. As the men started to leave, Rosie continued to tell them to leave and told them she knew who they were. Defendant hit Rosie over the head with the gun. The men left.

Rosie and the others went inside. The group came back in a car. Rosie was holding her daughter by the couch. Antonia was at the door. Rosie saw Moises get out of the car and start shooting at the house. Wood chips from the front door hit Antonia. Moises got back in the car and the group drove away.

Police officers collected a bullet projectile from the casing of the door at the Savala home. They also collected a bullet from the hallway floor. A shell casing was found in the gutter in front of the house. All of these items were .380 caliber.

In July a search warrant was served at the home of defendant and Moises. Seven family members came out of the house. Defendant's mother told the officers that defendant and Moises were in the crawl space under the house. Officers used tear gas to get Moises and defendant to come out from the crawl space.

At the house officers found pictures of Moises and defendant, a blue rag, and drawings; all these items were associated with the Sureno gang.

Officer David Ramirez testified as an expert on gangs. It was his opinion that defendant was a member of the Brick City gang and that Brick City is a criminal street gang.

**Defense**

Defendant's sister Maria testified that defendant and Moises were home the evening of June 14, 2002. Maria's friend Araceli testified similarly.

On cross-examination, Maria testified that her brother Francisco had problems with gangs in the past and Moises had a few problems. She testified that defendant did not have problems with gangs. She continued that it has been discussed in her household that her brothers have problems with gangs. She had heard her parents "chew out" her brothers about gangs and tell them that being in a gang was not going to take them anywhere. The father also told Maria's brothers not to get the younger children involved in gangs.

(Lod. Doc. 5, Unpublished Opinion, Fifth Appellate District Court of Appeal, at 2-4).

**DISCUSSION**

**I.    Jurisdiction and Venue**

A person in custody pursuant to the judgment of a state court may petition a district court for relief by way of a writ of habeas corpus if the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); *Williams v. Taylor*, 529 U.S. 362, 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution and Petitioner's custody arose from a conviction in the Stanislaus County Superior Court, which is within this judicial district.  28 U.S.C. § 84(b).  As an application for writ of habeas corpus may be filed in either the district court where Petitioner is currently incarcerated or

in the district where Petitioner was sentenced, the Court has jurisdiction over and is the proper venue for this action. *See* 28 U.S.C. § 2241(d).

## II.     ADEPA Standard of Review

In April 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for a writ of habeas corpus filed after the statute's enactment. *Lindh v. Murphy*, 521 U.S. 320, 326-327 (1997); *Jeffries v. Wood*, 114 F.3d 1484, 1499 (9th Cir. 1997), *cert. denied*, 522 U.S. 1008, 118 S.Ct. 586 (1997) (quoting *Drinkard v. Johnson*, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107 (1997), *overruled on other grounds by Lindh*, 521 U.S. 320 (holding AEDPA only applicable to cases filed after statute's enactment)). The instant petition was filed in 2006 and is consequently governed by AEDPA's provisions, which became effective upon its enactment on April 24, 1996. *Lockyer v. Andrade*, 538 U.S. 63, 70 (2003).

As Petitioner is in the custody of the California Department of Corrections and Rehabilitation pursuant to a state court judgment, Title 28 U.S.C. section 2254 remains the exclusive vehicle for Petitioner's habeas petition. *Sass v. California Board of Prison Terms*, 461 F.3d 1123, 1126-1127 (9th Cir. 2006) (quoting *White v. Lambert*, 370 F.3d 1002, 1006 (9th Cir. 2004) in holding that § 2254 is the exclusive vehicle for a habeas petitioner in custody pursuant to a state court judgment even where the petitioner is not challenging his underlying state court conviction). Under AEDPA, a petition for habeas corpus "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) (quoting 28 U.S.C. § 2254(d)(1)); *see Lockyer*, 538 U.S. at 70-71.

As a threshold matter, this Court must "first decide what constitutes 'clearly established Federal law, as determined by the Supreme Court of the United States.'" *Lockyer*, 538 U.S. at 71 (quoting 28 U.S.C. § 2254(d)(1)). In ascertaining what is "clearly established Federal law," this Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* (quoting *Williams*, 592 U.S. at 412). "In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.*

Finally, this Court must consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Lockyer*, 538 U.S. at 72, (quoting 28 U.S.C. § 2254(d)(1)). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413; *see also Lockyer*, 538 U.S. at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "[A] federal court may not issue the writ simply because the court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

Petitioner bears the burden of establishing that the state court's decision is contrary to or involved an unreasonable application of United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). Although only Supreme Court law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court decision is objectively unreasonable. *See Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003); *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 1999).

AEDPA requires that we give considerable deference to state court decisions. The state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's interpretation of its own laws. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

## III.    Review of Petitioner's Claim

Petitioner raises two grounds for relief.  The first ground alleges that the trial court's admission of hearsay testimony violated Petitioner's rights under the Confrontation Clause.  The second ground for relief alleges that there was insufficient evidence to support Petitioner's

conviction for the substantive offense and sentencing enhancement related to his participation in gang activities.

### A. Ground One: Confrontation Clause

Petitioner claims that his rights under the Confrontation Clause of the Sixth Amendment were violated by the admission of multiple hearsay statements. Petitioner specifically challenges the admission of statements attested to by Officer David Ramirez, including Officer Ramirez's testimony pertaining to incidents occurring on January 14, 2001 and June 28, 2002, a statement made by Allen Brocchini to Officer Ramirez that Petitioner confessed his status as a member of a gang, and Officer Ramirez's statement that Petitioner was an up and coming soldier in the gang. These statements were admitted as the basis for Officer Ramirez's expert opinion that Petitioner was a member of the Brick City Sureno gang.

This claim was presented on direct appeal to the California Court of Appeal, Fifth Appellate District. The state appellate court issued a reasoned decision affirming Petitioner's conviction and rejecting his argument that his right under the Confrontation Clause had been violated. (*See* Lod Doc. 5 at 4-13). Petitioner's subsequent petition for review before the California Supreme Court was summarily denied. (Lod. Doc. 7). When reviewing a state court's summary denial, the Court "look[s] through" the summary disposition to the last reasoned decision. *See Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991)). Thus, the California Supreme Court is presumed to have adjudicated this claim for the same reasons cited by the California Court of Appeal in their reasoned denial of Petitioner's claim. *See Ylst v. Nunnemaker*, 501 U.S. at 803. The decision by the California Court of Appeal on this issue is neither contrary to nor an unreasonable application of clearly established Federal law. The Confrontation Clause protects a defendant from unreliable hearsay evidence being presented against him during trial. *See* U.S. Constitution, Amendment VI. The Confrontation Clause of the Sixth Amendment specifically provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Id.* The Sixth Amendment's Confrontation Clause was made applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Pointer v. Texas*, 380 U.S. 400, 403-05 (1965). In *Crawford v.*

*Washington*, 541 U.S. 36, 59 (2004), the United States Supreme Court held that the Confrontation Clause bars the state from introducing out-of-court statements which are testimonial in nature, unless "the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." The *Crawford* court categorically rejected statements, which were otherwise deemed to be reliable, as exceptions to the Confrontation Clause, reasoning that "dispensing with confrontation because testimony is obviously reliable is akin to dispensing with a jury because a defendant is obviously guilty. This is not what the Sixth Amendment proscribes." *Id.* at 62. The Supreme Court in *Davis v. Washington*, 547 U.S. 813 (2006) further defined the contours of what constituted testimonial statements for the purposes of the Confrontation Clause. The *Davis* court addressed statements made by a woman to a 911 operator reporting she had been assaulted. The statements were found by the Supreme Court to be non-testimonial as the objective circumstances indicated that the "primary purpose" of the police interrogation was to meet an ongoing emergency and was thus not subject to the requirements set forth in *Crawford*. *Id.* at 2273-74. However, "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution," those statements would be testimonial and thus their admission would violated a criminal defendant's right under the Confrontation Clause. *Id.* at 2273-74.

### 1. *January 14, 2001 and June 28, 2002 Incidents*

Petitioner challenges statements pertaining to an alleged shooting on January 14, 2001 involving Petitioner and an attempted murder not involving Petitioner on June 28, 2002. Officer Ramirez testified that these incidents formed the basis upon which he opined that Petitioner was a member of the Brick City Sureno street gang. (RT at 197-200). As noted by the appellate court, the State is required to show at least two predicate acts, including the current offense, to establish that the gang had engaged in a pattern of criminal gang activity. (Lod. Doc. 5 at 6). Such a showing is required for a conviction under California Penal Code section 186.22(a) and for imposition of the sentencing enhancement under California Penal code section 186.22(b). The appellate court noted that evidence relating to the attempted murder in June 2002 did not implicate the Confrontation Clause as set forth in *Crawford* as the statements were not testimonial as they were derived from

pleas entered in other cases.  The Court does not find this conclusion objectively unreasonable as there exists no precedent finding evidence of pleas, abstracts of judgment, or sentencing minute orders testimonial under the definitions provided by *Crawford* or *Davis*.  Additionally, the Court notes that Petitioner has not offered any argument to refute the state court's finding that Officer Ramirez's testimony pertaining to this incident was derived from non hearsay sources.

The appellate court did not reach a conclusion as to whether the statements pertaining to the January 14, 2001 incident were admitted in violation of Petitioner's constitutional rights.  Rather, the state court held that, "[w]e need not determine if the evidence should have been excluded because its admission was harmless." (Lod. Doc. 5 at 7).  The state court found that as there was admissible evidence of at least two predicate acts, namely the attempted murder in 2002 and the current offense, additional evidence of the January 2001 incident was harmless as the State was only required to prove two predicate acts.

Assuming *arguendo* that the statements regarding the January 2001 incident were inadmissible hearsay in violation of Petitioner's Confrontation Clause rights, their admission did not have a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks omitted) (holding that, upon a finding of constitutional error,  a federal court may grant an application for habeas relief regarding a state evidentiary error only where the petitioner establishes that the error has a substantial and injurious effect or influence in determining the jury's verdict).  The Court notes that state appellate court applied a higher standard of reviewing constitutional errors, specifically the harmless beyond a reasonable doubt standard contained in *Chapman v. California*, 386 U.S. 18, 24 (1967), in finding that any error was harmless.   Likewise, the Court finds Petitioner has not met his burden in establishing that the admission of statements pertaining to the January 2001 incident had a substantial and injurious effect on the verdict.  This argument fails in light of the fact that there was enough admissible evidence to convict Petitioner of the substantive offense of participating in gang activity and impose the sentencing enhancement as there existed evidence of two other predicate acts outside of the January 2001 incident–the testimony that Petitioner invoked the name of the gang during the current altercation, the current altercation involved former or current members of an

opposing street gang, and the evidence of the June 2002 incident.

### 2. *Statement by Detective Brocchini*

Petitioner further challenges a statement from Detective Allen Brocchini, attested to by Officer Ramirez, that Petitioner had admitted to Brocchini that he was a member of the Brick City Sureno street gang. After reviewing the predicate acts discussed above, the prosecutor elicited from Officer Ramirez the following testimony:

> [Prosecutor]: Q. Now, has Carlos Mendoza ever admitted to you that he was a criminal street gang–admitted to you or to another officer that he's a member of a criminal street gang?
> [Officer Ramriez]: A. Yes. If I could refer to my report, please, to refresh my memory.
> Q. Please.
> A. On September 22nd of 2000, Carlos Mendoza was contacted by Detective Allen Brocchini during a stop. During the stop, Carlos admitted that he was a –that he and–let me rephrase this. Carlos Mendoza said that his brothers Francisco, Moises and he are both admitted members of the Brick City Sureno criminal street gang.

(RT at 204).

The state appellate court found Petitioner's statement to Detective Brocchini did not fall into the definitions of testimonial hearsay provided by *Crawford*. (Lod. Doc. 5 at 10-11). The Court finds the Court of Appeal's finding was an unreasonable application of clearly established precedent in *Crawford* and *Davis* as Petitioner's statement was not the relevant inquiry. *See* 28 U.S.C. § 2254(d)(1). While the Court of Appeal identified the correct inquiry to be undertaken, namely whether the hearsay statement was testimonial, the appellate court unreasonably applied this inquiry to Petitioner's statement. The relevant statement in determining whether Petitioner's Confrontation Clause rights were violated was Detective Brocchini's statement to Officer Ramirez. It was the absence and lack of a prior opportunity to cross examine Detective Brocchini that allegedly violated Petitioner's rights to confront witnesses against him, as statements by Petitioner himself do not constitute hearsay under federal law and presumably did not implicate the Confrontation Clause. *See* Fed.R.Evid. 801(d)(2).

A finding that the state court's decision was contrary to clearly established Supreme Court precedent does not end the inquiry before this Court. *See Butler v. Curry*, 528 F.3d 624, 641 (9th Cir. 2008). Rather, the Court must now determine if admission of this evidence violates Petitioner's constitutional rights, applying a *de novo* review standard. *See Frantz v. Hazey*, 513 F.3d 1002, 1013

(9th Cir. 2008) (en banc) (quoting *Panetti v. Quarterman*, 551 U.S. 930 (2007) in holding that after the requirement set forth in 28 U.S.C. § 2254(d)(1) are satisfied, a federal habeas court must then resolve the constitutional claim without the deference AEDPA otherwise requires).

Here, the Court finds that Petitioner's rights were not violated as the statements by Detective Brocchini were admitted as part of Officer Ramirez's explanation for his expert opinion that Petitioner was a member of a gang. The Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." *Crawford*, 541 U.S. at 59 n. 9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)); *see Moses v. Payne*, 555 F.3d 742, 755 (9th Cir. 2009). In *Moses*, the Ninth Circuit found that the admission of the out of court statement made by Petitioner's son to a social worker did not violate the Confrontation Clause as the statement was admitted to explain why the social worker called Child Protective Services. Similarly, the statement here was admitted to explain Officer Ramirez's expert opinion that Petitioner was a member of the Brick City Sureno street gang. The Federal Rules of Evidence permit testimony by an expert even where the expert's opinion is based on inadmissible hearsay evidence as long as the evidence is of a kind experts in the field regularly consult. Fed.R.Evid. 703; *see United States v. Hankey*, 203 F.3d 1160, 1169 (9th Cir. 2000) (holding that police officer possessing years of experience and special knowlege of gangs may qualify as expert witnesses); *see also United States v. Steed*, 548 F.3d 961, 976 n. 13 (11th Cir. 2008) (noting that there exists no Supreme Court precedent pertaining to an expert witness' reliance on otherwise inadmissible sources); *but cf. United States v, Mejia*, 545 F.3d 179, 197 (2nd Cir. 2008) (noting that a police expert's testimony explaining the inadmissible evidence he relied upon in reaching his conclusion may implicate the Confrontation Clause where the expert "simply transmit[s] that hearsay to the jury"). Here, the Court notes that the trial court admonished the jury several times during the course of Officer Ramirez's testimony that such evidence was being admitted to explain the basis for Officer Ramirez's testimony and not for its truth. (RT at 202, 203-204).

Assuming *arguendo* a violation of Petitioner's constitutional rights under the Confrontation Clause, Petitioner has not shown the error resulted in a substantial or injurious effect on the verdict. *Brecht*, 507 U.S. at 637. The Court is not left with grave doubts about whether the error in admitting

the statement by Detective Brocchini substantially influenced the verdict. *See Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009) (quoting *Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir. 2004) in stating that where "a habeas court is left with grave doubt about whether a constitutional error substantially influenced the verdict, then the error was not harmless") (citation marks omitted). The inquiry into whether the error is harmless requires the court to review the record to determine "what effect the error had or reasonably may be taken to have had upon the jury's decision." *Id.* (quoting *McKinney v. Rees*, 993 F.2d 1378, 1385-1386 (9th Cir. 1993) (quoting *Kotteakos v. United States*, 328 U.S.750, 764 (1946))). The factors to consider in making this inquiry are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Id.*

There was considerable admissible evidence against Petitioner regarding his participation in the Brick City Sureno street gang, including the testimony by several witnesses that Petitioner invoked the name of the Brick City Sureno street gang during the altercation with the victims, who were known members of a rival gang. As noted by the appellate court, this was just one piece of the evidence against Petitioner:

> The most compelling evidence was the testimony of Rosie and Antonia about the incidents of the day, including the uttering of the gang's name during the commission of the crimes. In addition, photographs were found in defendant's home. Defendant is in the photographs with others. Individuals are flashing gang signs with their hands. A blue rag associated with Sureno gangs was found in defendant's home. Defendant had a tattoo on his left shoulder of a mime. On the face of the mime is the number 3, which represents the number 13, which is the number claimed by Sureno gang members. Defendant was in the presence of other known gang members during prior contacts and was in the presence of his brother Moises, a known gang member, during the crimes in question here. Kinsino had personal knowledge of defendant's gang association. Defendant previously called Kinsino a name that is a derogatory term from a Sureno to a Norteno. Defendant's sister testified that her parents often castigated her brothers about gang affiliation. In light of the strength of the evidence against defendant regarding his gang involvement, error, if any, in admitting statements in violation of Crawford was harmless.

(Lod. Doc. 5 at 12).

Additionally, the evidence was admitted as part of the basis for Officer Ramirez's expert opinion and was only one of several things Officer Ramirez relied upon to form his opinion. The

jury was instructed that the inadmissible evidence attested to by Officer Ramirez was to explain his expert opinion and not for the truth of whether Petitioner was a member of a gang. "We must presume that the jury followed those instructions." *United States v. Awad* 551 F.3d 930, 940 (9th Cir. 2009); *see Greer v. Miller*, 483 U.S. 756, 766 n. 8 (1987) (plurality opinion) ; *see also Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (stating that, "[t]he rule that juries are presumed to follow their instructions is a pragmatic one, rooted less in the absolute certitude that the presumption is true than in the belief that it represents a reasonable practical accommodation of the interests of the state and the defendant in the criminal justice process").

In light of the evidence against Petitioner, the limited purposed in which the evidence was admitted, and the admonition by the trial court to the jury, the Court finds that any error would have been harmless. Thus, Petitioner has failed to establish that he is entitled to habeas corpus relief on this ground.

### 3.    *Statement that Petitioner was an Up and Coming Soldier*

Petitioner also challenges Officer Ramirez's statement that Petitioner was an up and coming soldier in the Brick City Sureno street gang. Specifically, in response to the prosecutor's question about what role Petitioner and co-defendant played within the criminal street gang, Officer Ramirez testified that Petitioner was an up and coming member of the gang. (RT at 240-241). As noted by the appellate court, though, there is no indication in the trial record as to how Officer Ramirez came to this conclusion. (Lod. Doc. 5 at 11-12). Petitioner has presented nothing more than a conclusory allegation with no evidence to support the contention that Officer Ramirez's testimony on this point was based on inadmissible hearsay evidence. *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations are not sufficient to support habeas relief). Consequently, there is no evidence upon which this Court could conclude that Officer Ramirez's testimony on this point implicates Petitioner's constitutional right to confront witnesses against him.

### 4.    *Ineffective Assistance of Counsel Claim*

In a related claim, Petitioner alleges that trial counsel was ineffective for failing to raise an objection to the hearsay statements under the Confrontation Clause. An allegation of ineffective assistance of counsel requires that a petitioner establish two elements–(1) counsel' s performance

was deficient and (2) petitioner was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687(1984); *United States v. Olson*, 925 F.2d 1170, 1173 (9th Cir. 1991); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994). Under the first element, Petitioner must establish that counsel's representation fell below an objective standard of reasonableness, specifically identifying alleged acts or omissions which did not fall within reasonable professional judgment considering the circumstances. *Strickland*, 466 U.S. at 688; *United States v. Quintero-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995). Judicial scrutiny of counsel's performance is highly deferential and there exists a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687; *Sanders v. Ratelle*, 21 F.3d 1446, 1456 (9th Cir. 1994). Secondly, Petitioner must show that counsel's errors were so egregious that Petitioner was deprived of the right to a fair trial, namely a trial whose result is reliable. *Strickland*, 466 U.S. at 687. To prevail on the second element, Petitioner bears the burden of establishing that there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Quintero-Barraza*, 78 F.3d at 1348 (quoting *Strickland*, 466 U.S. at 694). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the Petitioner as a result of the alleged deficiencies. *Strickland*, 466 U.S. at 697. Since prejudice is a prerequisite to a successful claim of ineffective assistance of counsel, any deficiency that was not sufficiently prejudicial to Petitioner's case is fatal to an ineffective assistance of counsel claim. Id.

As noted by Petitioner, counsel did raise objections to the statements on the grounds that they were hearsay, prejudicial, and violated California Evidence Code section 352. As admitted by Petitioner, counsel's objections at trial would have been futile as the Supreme Court precedent upon which Petitioner bases his Confrontation Clause claim, *Crawford*, was not decided until after the jury trial.[2] Consequently, any failure to object on Confrontation Clause grounds was not deficient as the

---

[2]Prior the Supreme Court's holding in Crawford, the admission of hearsay evidence was governed by Ohio v. Roberts, 448 U.S. 56, 66 (1980), which found that the Confrontation Clause was not implicated as long as the evidence was reliable. Petitioner has not established that the hearsay evidence here was unreliable such that it would have been excluded by the Roberts standard if Petitioner's counsel had raised the objection.

objection would not have prevented the evidence from being admitted. Further, if Petitioner is claiming that a failure to object was deficient because trial counsel failed to preserve the argument for appeal, Petitioner has failed to establish that prior to *Crawford* trial counsel would have known that the admission of such evidence implicated his Confrontation Clause rights. Petitioner has also failed to establish prejudice as the appellate court reviewed Petitioner's claim regarding the Confrontation Clause on its merits. (*See* Lod. Doc. 5).

### 5. *Error of State Law*

Petitioner also contends that the state court's admission of the alleged hearsay statements violated state law. Habeas relief is not available for errors of state law as it is not the province of a federal habeas court to re-examine a state court's determination of state law questions. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citing to *Rose v. Hodges*, 428 U.S. 19, 21 (1975) and 28 U.S.C. § 2241 for the proposition that in conducting habeas review, a federal court is limited to questions of whether the conviction violated the constitution, laws, or treaties of the United States); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) (holding federal court may not issue a writ of habeas corpus on the basis of a perceived error of state law). Furthermore, AEDPA requires that we give considerable deference to the state court's interpretation of its law. *Souch v. Schaivo*, 289 F.3d 616, 621 (9th Cir. 2002) (holding that a federal habeas court is bound by a state's interpretation of its own laws), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003). Thus, to the extent Petitioner argues that the trial court erred in admitting the statements as a matter of state law, Petitioner has failed to establish a cognizable claim for habeas relief before this Court.

However, the misapplication of state law may rise to the level of a due process violation that would entitle a petitioner to federal habeas relief. *See Richmond v. Lewis*, 506 U.S. 40, 50 (1992). Petitioner has not established that the admission of these statements rose to the level of a due process violation, especially in light of the limited purpose for which they were admitted and the admonitions by the trial court. Consequently, Petitioner's contention on this ground fails to provide a basis upon which the Court may grant the requested relief.

\\\

\\\

**B.** **Ground Two: Sufficiency of the Evidence**

In his second ground for relief, Petitioner contends that his constitutional rights were violated because insufficient evidence was presented at trial to support his conviction for participation in gang activities, including the sentence enhancement.

As the California Supreme Court summarily denied the petition, this Court looks through to the Fifth District Court of Appeal's last reasoned decision. *Ylst v. Nunnemaker*, 501 U.S. at 804-05 & n. 3.

In reviewing sufficiency of evidence claims, California courts expressly follow the standard articulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See People v. Smith*, 37 Cal.4th 733, 738-739 (Cal. 2005); *see also People v. Catlin*, 26 Cal.4th 81, 139 (Cal. 2001). "A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005) (noting under AEDPA, a petition for habeas corpus may only be granted where the state court's application of *Jackson* was objectively unreasonable), *cert. denied*, *Allen v. Juan H.*, 546 U.S. 1137 (2006). Pursuant to the Supreme Court's holding in *Jackson*, the test to determine whether a factual finding is fairly supported by the record is as follows, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319; *see also Lewis v. Jeffers*, 497 U.S. 764, 781 (1990).

Sufficiency of evidence claims are judged by "the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324, n. 16. Furthermore, this Court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1); *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). This presumption of correctness applies to a state appellate court's determinations of fact as well as those of a state trial court. *Tinsley v. Borg*, 895 F.2d 520, 525 (9th Cir. 1990). Although the presumption of correctness does not apply to a state court's determinations of legal questions or to mixed questions of law and fact, the state court's factual findings underlying those determinations are entitled to the same presumption. *Sumner v. Mata*, 455 U.S. 539, 597 (1981).

1    *1.    **Substantive Gang Offense***

2    Petitioner is not entitled to relief on this ground as the California Court of Appeal's

3    conclusion on this issue was not an objectively unreasonable application of *Jackson* nor was it

4    contrary to Supreme Court precedents. *See* 28 U.S.C. § 2254(d). The California Supreme Court has

5    extensively addressed the elements required for a conviction under Penal Code section 186.22(a),

6    most recently stating that:

> The substantive offense defined in section 186.22(a) has three elements. Active
> participation in a criminal street gang, in the sense of participation that is more than
> nominal or passive, is the first element of the substantive offense defined in section
> 186.22(a). The second element is "knowledge that [the gang's] members engage in or
> have engaged in a pattern of criminal gang activity," and the third element is that the
> person "willfully promotes, furthers, or assists in any felonious criminal conduct by
> members of that gang."

11    *People v. Lamas*, 42 Cal.4th 516, 523 (Cal. 2007)); *see People v. Robles*, 23 Cal.4th 1106, 1115

12    (Cal. 2000); *see also People v. Castenada*, 23 Cal.4th 743, 747 (Cal. 2000).

13    Here, the appellate court concluded that there was sufficient evidence to support Petitioner's

14    conviction on the substantive gang offense as well as the sentence enhancement. In finding that

15    Petitioner was an active participant, the Court of Appeal specifically pointed to the testimony of the

16    victims, Rosie and Antonio, that Petitioner and co-defendants invoked the gang's name during the

17    commission of the crime; evidence found at Petitioner's residence, including a picture showing

18    Petitioner with known gang members who were flashing gang signs in the picture and a blue rag

19    associated with Sureno gangs; Petitioner's tattoo also bore a symbol associated with the Sureno

20    gangs; Petitioner committed the crime in question with a known member of the Brick City Sureno

21    gang; the testimony by Kinsino that Petitioner was associated with Brick City Sureono gang and that

22    Petitioner had previously called Kinsino a derogatory name commonly used by a Sureno against a

23    Norteno; and the testimony by Petitioner's sister that her parents lectured her brothers about their

24    participation in gangs. The evidence summarized by the appellate court shows more than a nominal

25    or passive involvement and thus is sufficient for establishing the first element of the substantive

26    offense.

27    The appellate court's opinion focused exclusively on Petitioner's challenge to the first

28    element as Petitioner's appeal focused extensively on whether Petitioner was an active participant in

the gang. (Lod. Doc. 1 at 64-70). While the appellate court found that there was sufficient evidence that Petitioner committed the substantive offense, the court was silent as it its reasoning on the second and third elements. Where a state court provides no rationale for its decision, a federal habeas court determines whether the state court's decision was "objectively unreasonable" based on its independent reading of the record. *Brazzel v. Washington*, 491 F.3d 976, 981 (9th Cir. 2007) (quoting *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002)); *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Lockyer*, 538 U.S. at 75-76; *see also Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Considering the evidence in a light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Petitioner knew that the members of the gang engaged in a pattern of criminal activity and wilfully assisted criminal conduct by members of the gang.

As noted by Respondent, there is ample documentary evidence that members of the Brick City Sureno street gang participated in a pattern of criminal gang activity, resulting in conviction for certain members. (CT at 1-37). Among those convicted for being members of the Brick City Sureno street gang and for criminal conduct, such as assault with force likely to produce great bodily injury, were individuals Petitioner was associated with, including his brother. (Answer at 23). Viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could draw inferences that Petitioner knew of the criminal conduct engaged in by members of the Brick City Sureno street gang, especially as he was related to one of those members and had been seen in the company of the others.

The third element, furthering or assisting felonious conduct by a member of the gang, is also evidenced by the victims' testimony. As attested to by Rosie, the altercation began when Petitioner's co-defendant, Moises, a known gang member, and Kinsino, a rival gang member, began arguing. (Rt at 43). Petitioner later arrived at the scene and became involved in the altercation, which also included Frank, Kinsino's brother, who was also known to be a member of the rival gang. (RT at 46). Rosie testified that while Petitioner never said anything during the incident (RT at 68-69), Petitioner was present when the other co-defendant said, "[i]t's Brick City right here." (RT at 55). During this altercation with known members of a rival gang, Petitioner shot at Kinsino and struck

Rosie over the head with his gun. (RT at 47, 57). Petitioner later came back to the scene of the crime in a car with Moises, who opened fire on the house of the rival gang members. (RT at 59). Moises was convicted of assault with a deadly weapon or force likely to produce great bodily injury (Cal. Penal Code § 245(a)(2)), which is a serious felony under California law. *See People v. Delgado*, 43 Cal.4th 1059, 1065 (Cal. 2008); *see also* Cal. Penal Code § 1192.7(c)(8) and (31).

It is obvious from the testimony of Rosie that a reasonable trier of fact could conclude that Petitioner was aiding Moises as Petitioner shot at Kinsino, whom Moises was arguing with, and later accompanied Moises back to the scene where Moises opened fire on the house. As a conviction on the substantive offense does not require that Petitioner aided and abetted a separate felony than the underlying offense, evidence that Petitioner's action in this case assisted the felonious conduct of Moises is enough to meet the third element. *See People v. Salcido*, 149 Cal.App.4th 356, 370 (Cal. Ct. App. 2007). Taking all inferences in favor of the prosecution, there existed sufficient evidence to convict Petitioner on the substantive offense as there was sufficient evidence on all three elements of the crime.

### 2.    *Sentence Enhancement*

Petitioner further challenges the sufficiency of the evidence pertaining to the imposition of a sentence enhancement. California Penal Code section 186.22(b)(1) also contains a sentence enhancement for those "convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members." California courts apply the same standard of reviewing insufficiency of the evidence claims to the sentencing enhancement as they do to the substantive offense contained in 186.22(a). *See People v. Alexander L.*, 149 Cal.App.4th 605, 610 (Cal. Ct. App. 2007) (citing *People v. Augborne*, 104 Cal.App.4th 362, 371 (Cal. Ct. App. 2002)).

The California Court of Appeal's opinion does not address either of the two elements required to impose the sentencing enhancement–namely whether Petitioner possessed the specific intent to promote, further, or assist in criminal conduct by gang members and whether Petitioner committed the assault for the benefit of, at the direct or, or in association with a criminal street gang. The appellate court's opinion solely addressed Petitioner's challenge on appeal to the classification

of the Brick City Sureno street gang as a gang within the definition of California Penal Code §

186.22(f). To establish both the sentencing enhancement, as well as the substantive offense, the

State was required to prove that the Brick City Sureno street gang was a criminal gang. *See People*

*v. Williams*, 170 Cal.App.4th 587, 627 (Cal. Ct. App. 2009). This required that the State further

prove that the members of the gang engaged in a pattern of criminal gang activity. *Id*. (quoting Cal.

Penal Code § 186.22(e) and (f)). The testimony of Rosie and Antonio about the crime at issue and

documentary evidence regarding other criminal conduct by known gang members was sufficient

evidence that Brick City Sureno street gang whose members engaged in a pattern of criminal

conduct.[3] Consequently, the Court does not find the appellate court's adjudication of this issue

contrary to or an unreasonable application of *Jackson*.

It is unclear from the instant petition whether Petitioner is also challenging the sufficiency of

the evidence as to the elements required for imposing the sentencing enhancements. The Ninth

Circuit recently summarized those elements, stating that:

> To warrant a gang enhancement, California law requires the prosecutor to prove two
> things. First, the prosecutor must demonstrate that the defendant committed a felony
> "for the benefit of, at the direction of, or in association with [a] criminal street gang."
> Cal.Penal Code § 186.22(b)(1). Second, the prosecutor must show that the defendant
> committed the crime "with the specific intent to promote, further, or assist in any
> criminal conduct by gang members." Id. We have previously recognized the
> importance of keeping these two requirements separate, and have emphasized that the
> second step is not satisfied by evidence of mere membership in a criminal street gang
> alone. See Garcia v. Carey, 395 F.3d 1099, 1102-03 & n. 5 (9th Cir. 2005).

*Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir. 2009).

In *Bricerno*, the Ninth Circuit found that an expert's testimony was by itself insufficient

evidence to impose the sentencing enhancement as the expert's testimony could not establish the

specific intent requirement. *Id*. This was especially true as the criminal defendant in *Bricerno* had

offered proof of a different motivation–namely personal gain. The current case is distinguishable

from *Bricerno* as there was evidence outside of Officer Ramirez's testimony that would establish

Petitioner's specific intent to promote, further, or assist in criminal conduct by gang members. The

most convincing evidence that Petitioner intended to aid in criminal conduct by a member of the

---

[3]A conviction for the substantive offense does not necessitate that Petitioner's conduct be among the predicate offenses required for a showing of a pattern of criminal gang activity. *See Salcido*, 149 Cal.App.4th at 370.

gang was the invocation of the gang's name during the altercation and the fact that the victims were known to Petitioner as members of a rival gang.  The brandishing of the gang's name against a rival gang is the type of evidence the Ninth Circuit approved of  in *Bricerno* noting that "a jury could reasonably conclude that the defendant committed the crime with the specific intent to benefit the gang, as the defendant either committed the crime to protect gang "turf" or brandished gang signs or a gang moniker during the attack." *Id.* at 1081 (citing *People v. Villalobos*, 145 Cal.App.4th 310 (Cal. Ct. App. 2007) and *People v. Hill*, 142 Cal.App.4th 770, 773 (Cal. Ct. App. 2006)).

Here, the record reveals ample evidence from which a reasonable trier of fact could conclude beyond a reasonable doubt that Petitioner committed the crime in association with the Brick City Sureno street gang and that Petitioner did so with the specific intent to promote, further, or assist in criminal conduct by fellow members of the Brick City Sureno gang.  *See Jackson*, 443 U.S. at 324. Officer Ramirez testified that there was an ongoing battle for control of the area between the two rival gangs.  Petitioner participated in an attack initiated by Moises, a member of the gang, against rival gang members during which Petitioner himself shot at and assaulted two people.  Petitioner later returned in a vehicle with Moises, who then proceeded to fire at the house of the rival gang member.  From such evidence, a rational trier of fact could conclude that Petitioner committed the assaults with the specific intent to assist Moises' criminal conduct.  Such evidence is also sufficient for a rational trier of fact to conclude that Petitioner's crimes were committed in association with the Brick City Sureno street gang as their name was invoked during the altercation and the altercation was with rival gang members whom the Brick City Sureno street gang was battling for territory.  In sum, the state court did not err in concluding that there was sufficient evidence to convict Petitioner of the substantive offense and to impose the sentencing enhancement.  Petitioner has failed to establish that he is entitled to relief on this ground.

## IV.    Certificate of Appealability

A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in certain circumstances.  *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides that a circuit judge or judge may

issue a certificate of appealability where "the applicant has made a substantial showing of the denial of a constitutional right." Where the court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 123 S.Ct. at 1034; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). While the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 123 S.Ct. at 1040.

In the present case, the Court finds that reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Petitioner has not made the required substantial showing of the denial of a constitutional right. Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.

**IT IS SO ORDERED.**

**Dated:**     **April 3, 2009**                                   **/s/ John M. Dixon**
                                                        **UNITED STATES MAGISTRATE JUDGE**